***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner with some modifications.
 ***********
The Full Commission finds as facts and concludes as a matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. Plaintiff-employee is Helen Sperry.
2. Defendant-employer is the Koury Corporation.
3. On all relevant dates, the carrier on the risk was Selective Insurance Company.
4. Defendant-employer regularly employed three or more employees and was subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. An employee-employer relationship existed between plaintiff and defendant-employer on April 8, 2003, the date of the admittedly compensable injury accident.
6. Plaintiff was terminated by defendant-employer on or about September 1, 2006 and she has not worked or received indemnity compensation since that time.
7. Plaintiff sustained an admittedly compensable injury to her low back on April 8, 2003.
8. On all relevant dates, plaintiff's average weekly wage was $570.40, yielding a compensation rate of $380.29.
9. An Industrial Commission Form 21 was approved by the Commission on February 28, 2006 for payment of a 20% permanent partial disability rating to plaintiff's back.
10. Defendants are entitled to a net credit for unemployment benefits plaintiff received if she is awarded total disability compensation.
11. The following exhibits were received into evidence at the hearing before the Deputy Commissioner:
 a. A notebook of various stipulated exhibits, marked as Stipulated Exhibit (2), which included the following:
 (i). Industrial Commission forms and filings; *Page 3 
 (ii). Medical records;
 (iii). A medical bill chart;
 (iv). Tax information;
 (v). Correspondence to defendant-carrier;
 (vi). Plaintiff's Employment Security Commission file;
 (vii). Plaintiff's Responses to Defendants' First Set of Interrogatories with attachments, and;
 (viii). Records from the North Carolina Department of Health and Human Services Vocational Rehabilitation Services.
 b. A packet of additional interrogatory responses, marked as Stipulated Exhibit (3);
 c. Correspondence to Executive Secretary Tracey H. Weaver, dated April 23, 2007, marked as Stipulated Exhibit (4), and;
 d. Plaintiff's employment file, marked as Stipulated Exhibit (5).
 *********** ISSUES TO BE DETERMINED
1. Whether plaintiff's job as resident manager with defendant-employer following the injury by accident established her wage earning capacity;
2. Whether plaintiff sustained a change of condition following approval of the Form 21 on February 26, 2006;
3. Whether plaintiff has been continually disabled since September 1, 2006 when she was terminated from her position with defendant-employer and, if so, to what compensation, if any, is she entitled; *Page 4 
4. Whether plaintiff should be ordered to participate in a vocational assessment and labor market survey with a vocational expert of defendants' choosing;
5. Whether plaintiff or defendants are entitled to attorneys' fees pursuant to N.C. Gen. Stat. § 97-88.1; and
6. Whether defendants are entitled to reimbursement by plaintiff for her one-half share of the mediation cost from the mediation held on December 5, 2007.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the hearing before the Deputy Commissioner, plaintiff was 58 years of age, with her date of birth being February 24, 1950. Plaintiff is a high school graduate and attended the University of North Carolina at Greensboro (UNCG) for two years, but did not obtain a degree. Prior to her employment with defendant-employer, plaintiff worked part-time for UNCG.
2. Plaintiff became employed by defendant-employer in 1985 as a resident manager. In that capacity, plaintiff managed two apartment complexes and her duties included leasing and checking apartments, making evictions, generating reports and payroll, and supervising maintenance personnel. Both before and after the incident giving rise to this claim, the resident manager job did not require any heavy lifting and allowed plaintiff to sit and stand as needed. During her 20 years of working for defendant-employer, plaintiff was never written up or disciplined. *Page 5 
3. Prior to the incident giving rise to this claim, plaintiff underwent a lumbar fusion on June 5, 2001. Thereafter, plaintiff was out of work for three to four months.
4. On April 8, 2003, plaintiff was coming out of a bathroom at work when she tripped on a runner in the hall and fell, injuring her back. Defendants admitted the compensability of this accident.
5. Plaintiff first sought medical treatment for her injury from Dr. Mark Roy on April 8, 2003. Following an examination, Dr. Roy medically excused plaintiff from work until April 13, 2003, and assigned permanent work restrictions of no lifting over ten pounds, no bending or stretching, no excessive stair climbing or walking, and the ability to sit and stand as needed.
6. On June 27, 2003, Dr. Roy noted that a CT scan showed no loosening of any hardware related to the 2001 fusion surgery and that an MRI failed to demonstrate any disc or compressive pathology. Dr. Roy continued to treat plaintiff conservatively with medication and periodic follow-up examinations every two or three months.
7. On May 7, 2005, Dr. Roy opined that plaintiff had reached maximum medical improvement and assigned her a 30% permanent partial disability rating to her back. In response to a questionnaire from plaintiff's counsel, Dr. Roy apportioned 10% of plaintiff's rating to the 2001 fusion surgery and 20% to the work-related accident of April 8, 2003.
8. The parties entered into an Industrial Commission Form 21 agreement to pay plaintiff compensation for the 20% permanent partial disability rating to her back, which was approved by the Commission on February 28, 2006.
9. Following her injury by accident, on April 14, 2003, plaintiff returned to work at her job as resident manager. Upon returning to work, plaintiff's restrictions did not limit her ability to perform any of the duties associated with her job as resident manager. Plaintiff missed *Page 6 
work due to her work-related back injury and pain on June 4, 2003, May 17, 2005, and from October 4, 2005 through October 6, 2005. Except for these missed work dates, plaintiff continued working as resident manager from April 14, 2003 through October 31, 2005, without accommodations having to be made by defendant-employer.
10. On November 1, 2005, plaintiff went out of work pursuant to the Family and Medical Leave Act (FMLA). Plaintiff took this leave to care for her mother who had fallen and broken her hip.
11. Although plaintiff intended to return to work for defendant-employer in January of 2006, she remained out of work to undergo surgery on her right and left thumbs and to repair a hernia. These conditions were not related to her employment with defendant-employer. The hernia repair was the last procedure performed and was performed in August 2006. Plaintiff had no work restrictions assigned as a result of these conditions or surgeries.
12. From January 2006 to August 2006 when she was out of work due to non-work related conditions and surgeries, plaintiff remained in contact with defendant-employer regarding her temporary inability to return to work. Additionally, plaintiff met with Mr. Koury on multiple occasions to discuss her return to work and to request an informal extension of her FMLA leave during this period, which was allowed by Mr. Koury. At no time prior to August 31, 2006, did any representative of defendant-employer inform plaintiff that her job would not be available when her leave ended.
13. Following plaintiff's hernia surgery, she went to see Mr. Koury and informed him that she would be ready to return to work in a few weeks on or about September 1, 2006. However, Mr. Koury instructed plaintiff to report to Human Resources. When plaintiff reported *Page 7 
to Human Resources, Robin Smith informed plaintiff that she was terminated, effective August 31, 2006.
14. While plaintiff was out of work on FMLA, a co-worker assumed the majority of the duties of the resident manager job, such that defendant no longer had a need for plaintiff to return to that position.
15. As for plaintiff's ability to return to other employment, Beverly Carlton, defendants' vocational expert, testified that plaintiff's ability to perform the resident manager position from April 8, 2003 until October 31, 2005 showed an ability to earn wages. Ms. Carlton further testified that the resident manager position which plaintiff performed was a job that was available to the general public in the open job market. Additionally, plaintiff testified that she would have been capable of performing her job as resident manager, had the position been available after she recovered from her hernia repair. Ms. Carlton performed a labor market survey which showed opportunities for plaintiff to return to work at suitable employment within plaintiff's restrictions and education level and that paid at or near her pre-injury average weekly wage.
16. According to Dr. Roy, plaintiff has remained at maximum medical improvement since May 7, 2005. Further, while plaintiff is taking a number of medications for her back condition, Dr. Roy opined that none of those medications adversely affect her ability to work, specifically with regard to the resident manager position. Finally, Dr. Roy stated that plaintiff continues to be capable of working for defendant-employer as a resident manager.
17. Based upon the greater weight of the evidence of record, the Commission finds that the post-injury resident manager job that plaintiff performed was not make-work and constituted suitable employment. *Page 8 
18. Plaintiff has not experienced a change of condition as it relates to her April 8, 2003 injury by accident since she reached maximum medical improvement on May 7, 2005 or since the approval of the Form 21 on February 28, 2006.
19. Subsequent to August 31, 2006, plaintiff's inability, if any, to earn wages is not related to her April 8, 2003 injury by accident.
20. Neither party brought, prosecuted, or defended this action without reasonable ground.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On April 8, 2003, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer resulting in an injury to her lower back. N.C. Gen. Stat. § 97-2(6).
2. In order for the Commission to award plaintiff total disability compensation, plaintiff must prove that she experienced a change of condition after approval of the Form 21 for the permanency rating on February 28, 2006, and subsequent payment by defendants. Plaintiff may prove a change of condition by showing either a change in her physical condition that affects her ability to earn wages or a change in her earning capacity although her physical condition remains the same.Blair v. American Television Communications Corp., 124 N.C. App. 420,477 S.E.2d 190 (1996). In the case at bar, plaintiff's physical condition and wage earning capacity have remained unchanged since she reached maximum medical improvement and any failure to locate employment is not the result of the compensable injury by accident. Id. *Page 9 
3. Therefore, plaintiff sustained no change of condition as it relates to her April 8, 2003 injury by accident since she reached maximum medical improvement on May 7, 2005 or since the approval of the Form 21 on February 28, 2006. N.C. Gen. Stat. § 97-47.
4. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of her April 8, 2008 injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
5. Neither party is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1, in that the action was not brought, prosecuted or defended based upon stubborn, unfounded litigiousness. Sparks v.Mountain Breeze Restaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
6. Pursuant to Rule 7 of the Industrial Commission's Rules for Mediated Settlement Conferences, defendants are entitled to have plaintiff reimburse them for one-half of the mediation costs.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim that she is entitled to total disability compensation subsequent to September 1, 2006 is DENIED.
2. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of her injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. *Page 10 
3. Plaintiff shall reimburse defendants for her one-half share of the mediator's fee which resulted from the mediation on December 5, 2007.
4. Defendants shall pay the costs.
This 21 day of January, 2009.
 S/___________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1